FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMI E., on behalf of C.J.D., a minor child,, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:18-CV-5030-JTR <br><br> ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 21. Attorney D. James Tree represents Jami E., who appears on behalf of her minor son, C.J.D. (Plaintiff); Special Assistant United States Attorney Jeffrey R. McClain represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

## JURISDICTION

On June 9, 2014, Ms. E. filed an application for Supplemental Security Income (SSI) benefits, on behalf of Plaintiff, alleging Plaintiff had been disabled since March 29, 2011, due to communication limitations; a limited ability to progress in learning; and difficulties in taking care of his personal needs, paying attention and sticking with tasks. Tr. 162, 239-244. Plaintiff's application was denied initially and upon reconsideration.

On February 27, 2017, an administrative hearing was held before Administrative Law Judge (ALJ) Stewart Stallings, at which time testimony was taken from Plaintiff's mother, Ms. E., and medical expert Kent B. Layton, Psy.D. Tr. 45-73. The ALJ issued a decision finding Plaintiff was not disabled on April 24, 2017. Tr. 15-28. The Appeals Council denied review on December 22, 2017. Tr. 1-6. The ALJ's April 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 20, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on September 19, 2005, and was 5 years old on the alleged onset date, March 29, 2011. Tr. 240. He was in the fifth grade in school at the time of the February 27, 2017 administrative hearing. Tr. 51.

Plaintiff's mother, Ms. E., testified Plaintiff needed lots of reminders, could not sit still, and talked incessantly. Tr. 52-53. With respect to school, she stated Plaintiff could not sit still, but he was very smart. Tr. 53. There was no Individual Education Plan (IEP) in place for Plaintiff at the time of the administrative hearing. Tr. 53.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner follows a three-step sequential process in determining

childhood disability: (1) whether the child is engaged in substantial gainful activity; (2) if not, whether he or she has a medically determinable severe impairment; (3) and, if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. § 416.924.

If the Commissioner determines at step three that the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the analysis ends there. If not, the Commissioner decides whether the child's impairment results in limitations that functionally equals a listing. 20 C.F.R. § 416.926a(a). In determining whether an impairment or combination of impairments functionally equals a listing, the Commissioner assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal a listing, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked limitation" in a domain results when the child's impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme limitation" in a domain results when the child's impairment(s) interferes "very seriously" with his ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

When evaluating the ability to function in each domain, the ALJ considers information that will help answer the following questions "about whether your impairment(s) affect your functioning and whether your activities are typical of other children your age who do not have impairments":

(i) What activities are you able to perform?

(ii) What activities are you not able to perform?

(iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?

(iv) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community?

(v) Do you have difficulty independently initiating, sustaining, or completing activities?

(vi) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

20 C.F.R. § 416.926a(b)(2)(i)-(vi).

The evaluation of functional equivalence begins "by considering the child's functioning without considering the domains or individual impairments." Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach, SSR 08-1p, 2009 WL 396031 * 1 (Feb. 17, 2009). The rules provide that "[w]hen we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and limitations and restrictions." *Id*. citing 20 C.F.R. § 416.926(a)(c). The rules instruct the Commissioner to:

> Look at information we have in your case record about how your functioning is affected during all your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community.

*Id*. citing 20 C.F.R. § 416.926a(b). The severity of limitation in each affected functional domain is then considered. This technique is called the "Whole Child" approach.

///

## ADMINISTRATIVE DECISION

On April 24, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the June 9, 2014 application date. Tr. 18.

At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: attention deficit/hyperactivity disorder, opposition defiant disorder, and insomnia. Tr. 18.

The ALJ determined at step three that the evidence of record demonstrated Plaintiff's impairments, although severe, do not meet, medically equal, or functionally equal the criteria of any of the listings impairments. Tr. 18. With regard to functional equivalence, the ALJ concluded that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others (no limitation), moving about and manipulating objects (no limitation), caring for himself (no limitation), and health and physical well-being (no limitation). Tr. 22-27. The ALJ thus determined Plaintiff's impairments did not result in marked or extreme limitations in any of the six domains. Tr. 27.

Accordingly, the ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 9, 2014, the disability application date, through the date of the ALJ's decision, April 24, 2017. Tr. 27-28.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in this case by (1) failing to consider the "Whole Child" in determining Plaintiff was not disabled; and (2) failing to give legally sufficient reasons for rejecting the opinions of Qayyum Nazar, M.D., Plaintiff's school teachers, and Plaintiff's mother. ECF No. 14 at 1.

**DISCUSSION**[1]

**A.	"Whole Child" Approach**

Plaintiff first contends the ALJ erred by failing to fully incorporate the opinion of the medical expert that Plaintiff meets a listing and has marked functional limitations in multiple areas when he is not medicated, contrary to the "Whole Child" approach to disability adjudication. ECF No. 14 at 4-7.

The ALJ must evaluate functional equivalence using the "Whole Child" approach. SSR 09-1p; *see also* 20 C.F.R. § 416.926a(b)-(c). Under this method, it is the duty of the ALJ to (1) identify all of the activities the child engages in and the domains associated with each activity, (2) determine whether the child's impairments cause limitations in these activities, and (3) rate the severity of the limitations and determine whether the impairments functionally equal the listings. *See* SSR 09-1p.

In this case, the ALJ explicitly stated he analyzed Plaintiff under the "Whole Child" approach. Tr. 18-19. The ALJ indicated he compared Plaintiff's functionality to other children the same age who do not have impairments and considered the type, extent and frequency of help Plaintiff needed to function. Tr. 18-19. In his decision, the ALJ specifically considered each of the six domains, identified the Social Security Administration's examples of typical functioning in several age categories to use as a frame of reference to determine whether a child is

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

functioning typically for his or her age, and rated the severity of Plaintiff's limitations in each category. Tr. 22-27.

While Plaintiff argues the ALJ's "Whole Child" approach was inadequate given evidence that Plaintiff's medications were not effective at all times (i.e. outside of school hours), the ALJ identified the Social Security Administration's examples in each of the six functional domains and properly applied evidence from the record to formulate his conclusions regarding Plaintiff's level of functioning in each of those categories. Tr. 22-27. The Court thus finds the ALJ met his burden under the "Whole Child" approach by sufficiently detailing how he arrived at his conclusions with respect to each of the six domains. The ALJ reasonably evaluated the "Whole Child" when considering Plaintiff's disability claim.

**B.     Opinion Evidence**

Plaintiff next argues the ALJ erred by failing to provide sufficient reasons for rejecting the opinions of treating physician Nazar, Plaintiff's school teachers, and Plaintiff's mother. ECF No. 14 at 7-17.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding a nonexamining doctor's opinion "with nothing more" does not constitute substantial evidence). In

weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ is also required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996). Nevertheless, pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it. "Other sources" include teachers, family members and other non-medical personnel.

Nonexamining medical professional Kent B. Layton, Psy.D., testified as a medical expert at the administrative hearing. Tr. 54-69. Dr. Layton testified that when Plaintiff is on his medications, he does "very well"; when he is off of his medications he does not do well. Tr. 57. He described Plaintiff as "very bright" and "very intelligent," but said Plaintiff was distracted when off his prescribed medications to the point of being markedly limited in acquiring and using information, attending and completing tasks, and interacting and relating with others. Tr. 58-59, 67. However, Dr. Layton stated that all six of Plaintiff's functional domains were less than markedly limited when Plaintiff was on his medications. Tr. 59. He further testified that although the record reflected Plaintiff's medications occasionally did not last an entire day, Plaintiff was still less than markedly impaired when taking his prescribed medications. Tr. 61. Dr. Layton explained that a child like Plaintiff, suffering from ADHD and a bipolar disorder, will still do great when he or she is given the proper medicine, which may need to be adjusted as the child gets older and grows. Tr. 67-68.

The ALJ accorded "great weight" to Dr. Layton's nonexamining opinions, Tr. 20, and substantially relied on his opinions in evaluating Plaintiff's disability

claim, Tr. 22-27. The ALJ found Dr. Layton's testimony consistent with the medical evidence of record, which documented Plaintiff's relatively stable functioning while on medications, and the statements of Plaintiff's teachers concerning Plaintiff's functioning. Tr. 20. The undersigned does not agree.

With respect to Plaintiff's teachers, Crystal Rincon, Plaintiff's fifth grade teacher, reported on February 13, 2017, that Plaintiff had trouble focusing and was hyperactive, but also stated that Plaintiff "does fine while on his medication." Tr. 313. Ms. Rincon reported that Plaintiff was markedly limited in four of the six domains. Tr. 313-315. On March 18, 2016, Karen J. Brutzman, Plaintiff's fourth grade teacher, stated Plaintiff was hyperactive and had difficulty paying attention in class. Tr. 304. Ms. Brutzman found Plaintiff markedly impaired in two of the six domains. Tr. 304-306. On May 29, 2015, Marina Hulstrom, Plaintiff's teacher at the time, indicated Plaintiff struggled to focus for more than a few minutes at a time, was easily distracted, and acted before fully processing. Tr. 301. Ms. Hulstrom also opined Plaintiff was marked limited in two of the six domains. Tr. 301-303.

Contrary to the ALJ's finding, Tr. 20, these "other source" opinions of Plaintiff's teachers are not consistent with the assessment of Dr. Layton that Plaintiff was less than markedly limited in all six of the functional domains.

As to the medical evidence of record, Plaintiff's treating pediatrician Qayyum Nazar, M.D.,[2] indicated in June 2015 that Plaintiff was hyperactive and had trouble focusing and sleeping, but the report's prognosis section indicated Plaintiff was stable with his medicines. Tr. 455. Dr. Nazar consistently noted Plaintiff's symptoms as fidgeting, can't stay seated, inattentiveness, can't stay on

---

[2]The ALJ accorded "great weight" to Dr. Nazar's June 2015 opinion that Plaintiff was stable on medication, Tr. 20, but gave Dr. Nazar's February 2017 marked and extreme limitation findings "little weight," Tr. 21.

task, forgetfulness, impulsiveness, and poor academic performance, but also noted Plaintiff was doing much better on medication. Tr. 457, 459, 463, 465, 467, 469, 471, 473, 477, 479, 481, 483, 485, 487, 489, 491. In February 2016, Dr. Nazar reported Plaintiff was "doing good on the meds, but behavior at school is not well controlled." Tr. 477. Dr. Nazar added Trileptal[3] to Plaintiff's medication regimen at that time. Tr. 478. Dr. Nazar completed a Domain Statement for Child form on February 1, 2017. Tr. 497-499. While Dr. Nazar indicated Plaintiff's symptoms improve to tolerable levels, most days, with medication and a reduction of sugar in the morning, Dr. Nazar concluded Plaintiff had marked and extreme limitations in four of the six domains. Tr. 497-499.

Defendant contends the ALJ reasonably determined Dr. Nazar's opinion that Plaintiff continued to suffer marked and extreme limitations was not reliable. ECF No. 21 at 7-10. As noted by Defendant, the ALJ concluded Dr. Nazar's treatment notes would have shown greater medication adjustments or increased treatment if Plaintiff was as limited as opined by Dr. Nazar. However, an ALJ does not have the medical training or expertise to make a conclusion regarding whether medication adjustments would be beneficial or whether increased treatments were available. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion;" he is "simply not qualified to interpret raw medical data in functional terms."). As further indicated by Defendant, the ALJ determined Plaintiff's lack of a 504 plan or IEP was a valid reason for rejecting Dr. Nazar's opinions. Tr. 21. The fact that Plaintiff was not receiving special education services is not persuasive evidence that Plaintiff does not have marked functional limitations. The definition of disability in the Social Security Act is

---

[3]Trileptal is an anticonvulsant (a medication for treating seizures) which is also used as a mood stabilizer.

entirely separate from the definition of an educational disability; moreover, the lack of a special education plan could possibly be the result of Plaintiff's parent not using the proper channels for seeking such services. Finally, Defendant notes the ALJ found Dr. Nazar's opinions inconsistent with the statements of Plaintiff's teachers. Tr. 21. The marked limitation findings of all three teachers, as discussed above, is not in conflict with Dr. Nazar's opinions. The Court finds unconvincing the ALJ's rationale for according "little weight" to the opinions of Dr. Nazar. Tr. 21. The Court further finds the medical records of treating physician Nazar do not provide support for Dr. Layton's conclusion that when Plaintiff was on his medications all six of Plaintiff's functional domains were less than markedly limited.

It is apparent the ALJ erred by relying greatly on the unsupported opinions of nonexaminer Layton when formulating his decision in this case.

As the treating pediatrician, Dr. Nazar's opinion is generally entitled to the greatest weight. Unfortunately, however, treating physician Nazar's medical reports fail to provide unambiguous evidence of Plaintiff's level of functioning. It is not clear whether Dr. Nazar believed Plaintiff's medication regime adequately controlled Plaintiff's symptoms, nor whether Dr. Nazar's assessments of Plaintiff reflect Plaintiff's functioning level with or without those prescribed medications. Accordingly, the Court finds a remand is necessary for further evaluation of Dr. Nazar's opinion. On remand, Dr. Nazar should be contacted and clarification should be elicited. If Dr. Nazar truly believes Plaintiff has marked and extreme limitations despite Plaintiff taking appropriate medications for his impairments, the ALJ should strongly consider this treating physician evidence when reassessing Plaintiff's disability claim.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award benefits. The Court has the discretion to remand the case for

additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall reconsider Plaintiff's disability claim utilizing the "Whole Child" approach. SSR 09-1p; *see also* 20 C.F.R. § 416.926a(b)-(c). The ALJ shall reconsider the other source opinions of Plaintiff's school teachers and Plaintiff's mother, Ms. E., as well as all other medical evidence of record. The ALJ shall also take into consideration any other evidence or testimony relevant to Plaintiff's disability claim. As discussed in the body of this order, the ALJ shall further develop the record by contacting treating pediatrician Dr. Nazar and eliciting clarification of Dr. Nazar's opinion regarding Plaintiff's level of functioning. A more definitive opinion regarding the effect of Plaintiff's medication regimen on Plaintiff's ability to function in each of the six functional domains will be helpful for a proper decision to be made regarding Plaintiff's disability claim. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

///

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED February 27, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE